1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| **Freddie Lee Thornton,**<br>Petitioner<br>-vs-<br>**Charles L. Ryan, et al.,**<br>Respondents | CV-09-0094-PHX-GMS (JRI)<br><br>**REPORT & RECOMMENDATION**<br>**On Petition for Writ of Habeas Corpus**<br>**Pursuant to 28 U.S.C. § 2254** |

## I. MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Phoenix, Arizona, filed an Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on May 12, 2009 (Doc. 6).  On December 3, 2009 Respondents filed their Answer (Doc. 14). Petitioner has not filed a reply.

The Petitioner's Petition is now ripe for consideration.  Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND
## A. PROCEEDINGS AT TRIAL

**Factual Background** - In his Motion to Supplement *Pro Per* Petition for Post-Conviction Relief (Exhibit Q)[1], Petitioner described the factual background of his original conviction as follows:

---

[1]  Exhibits to the Answer (Doc. 14) are referenced herein as "Exhibit __."

On July 30, 1993, the defendant sold 55 milligrams and 63 milligrams of cocaine from his vehicle to two separate undercover police officers in downtown Phoenix. When police officers later told the defendant he was under arrest, he exited his car and attempted to flee from police officers on foot. The defendant was swiftly apprehended without injury to anyone.

(Exhibit Q, Mot. Supp. at 2.)

**Original Prosecution** - On August 13, 1993, Petitioner was indicted in Maricopa County Superior Court on two counts of sale of narcotic drugs, and one count of escape in the second degree. (Exhibit A, Indictment.) Petitioner absconded during trial, and was convicted *in absentia* on April 14, 1994. (Exhibit B, M.E. 4/14/94.)

In April, 2000, Petitioner was apprehended, and held for sentencing. (Exhibit B, M.E.s 4/4/00 to 5/24/00.) On June 1, 2000, Petitioner appeared for sentencing. Sentence was suspended, and Petitioner was placed on probation for five years on the sale of narcotics counts and three years on the escape.[2] A two month jail term was imposed as a condition of probation. (Exhibit C, M.E. 6/1/00.)

**First Revocation Proceeding** - On February 7, 2002, Petitions to Revoke Probation was filed as to both terms of probation, alleging commission of an aggravated assault, failure to report, and failure to complete substance abuse treatment. (Exhibit E, Pet. to Revoke.) Petitioner eventually entered an admission to the failure to appear violation, and the remaining allegations were dismissed. (Exhibit F, M.E. 4/2/02.) The same date, Petitioner was reinstated on probation to the original terms, with the *proviso* that probation was to commence as of September 1, 2000. (Exhibit G, M.E. 4/2/02.)

**Second Revocation Proceeding** - On September 11, 2002, Supplemental Petitions to Revoke Probation were filed, alleging that Petitioner violated his terms of probation requiring truthfulness and participation in domestic violence treatment. Petitioner admitted violating the truthfulness condition (Exhibit I M.E. 11/27/02), and was reinstated on probation, with additional conditions, and the remaining allegations were dismissed (Exhibit

---

[2] As discussed hereinafter, it was determined in Petitioner's PCR proceeding that this grant of probation was not authorized by state statutes then in effect.

1    J, M.E. 11/27/02.)

2    **Third Revocation Proceeding** - On April 1, 2005, new Petitions to Revoke Probation

3    (Exhibit K) were filed alleging that Petitioner failed to report, failed to reside at an approved

4    address, possessed cocaine, failed to submit to testing, failed to comply with a written

5    directive, and failed to make required payments. A warrant for Petitioner's arrest (Exhibit

6    L) was issued, and Petitioner was eventually apprehended

7    On April 6, 2006, Petitioner entered an admission to the failure to report violation, and

8    probation was revoked and Petitioner was sentenced to concurrent, presumptive sentences

9    of seven years on each of the two narcotics convictions. Exhibit N, M.E. 54/606

10

11   **B.  PROCEEDINGS ON DIRECT APPEAL**

12   Petitioner did not file a direct appeal. (Amend. Pet., Doc. 6 at 2.)

13

14   **C.  PROCEEDINGS ON POST-CONVICTION RELIEF**

15   On April 13, 2006, Petitioner filed a Notice of Post-Conviction Relief (Exhibit V).

16   Petitioner eventually commenced postconviction relief proceedings. Counsel was appointed,

17   but was unable to find an issue of review. On September 29, 2006, Petitioner filed his *Pro*

18   *Per* Petition for Post Conviction Relief (Exhibit O). Petitioner argued that he was improperly

19   sentenced. Petitioner reasoned that he eventually received a flat-time sentence, and probation

20   was not available to convictions subject to flat time sentencing, and therefore his original

21   sentence to probation was invalid. Petitioner argued the state had sentenced him to probation

22   under a "new law" and then to a flat-time sentence under an "old law." Petitioner requested

23   imposition of a flat time sentence of seven years, to date from the original sentencing date

24   of June 1, 2000. Petitioner also argued his successive sentencing (e.g. the suspension of

25   sentence and the eventual sentence upon revocation of probation) was a violation of double

26   jeopardy.

27   Petitioner then filed a Motion to Supplement (Exhibit Q), arguing that his federal due

28   process and equal protection rights were violated when the "*nunc pro tunc*" sentence was

entered on April 6, 2006, sentencing Petitioner under the "old version" of the sentencing statute.

On January 25, 2008, the PCR court denied the petition, reasoning:

> Under the version of A.R.S. section 13-2408 effective on the date of the offenses, the Defendant was "not eligible for...release from confinement on any other basis until the person has served the sentence imposed." Although the Defendant was originally, erroneously, placed on probation, and subsequently reinstated twice, when his probation was revoked on 4/16/06, this statute governed the sentence imposed, A.R. S. Section 1-246, *State v. Stine*, 184 Ariz. 1, 906 P.2d 58 (1995).

(Exhibit R, M.E. 1/25/07 at 1.)

Petitioner then filed a Petition for Review (Exhibit S) asserting claims that his sentencing arguments showed a violation of state law and justified claims of: violation of his confrontation, due process and equal protection rights (*id.* at 5-6), cruel and unusual punishment (*id.* at 6-8), double jeopardy (*id.* at 8), malicious prosecution (*id.* at 9), and ineffective assistance of counsel (*id.* at 10-13). That petition was summarily denied. (Exhibit T, Order 11/9/07.)

Petitioner then sought review by the Arizona Supreme Court, which was summarily denied on April 1, 2008. (Exhibit U, Order 4/1/08.)

**D.  PRESENT FEDERAL HABEAS PROCEEDINGS**

**Petition** - Petitioner commenced the current case by filing his original Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on January 15, 2009 (Doc. 1). That Petition was dismissed with leave to amend on the basis that Petitioner failed to allege a violation of federal law.  (Order 5/1/09, Doc. 5.)  On May 12, 2009, Petitioner filed his instant Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 6.) Petitioner's Petition asserts the following three grounds for relief:

1.    A violation of his Fifth Amendment due process rights, as a result of the imposition of a flat-time sentence, and the failure to give credit for time spent on probation.

2.    Petitioner received ineffective assistance of counsel at his original sentencing,

when trial counsel represented to Petitioner and the Court that probation was available.

3.    A violation of his Fourteenth Amendment due process and equal protection rights, as a result of the imposition of a flat-time sentence, and the failure to give credit for time spent on probation.

**Answer** - On December 3, 2009, Respondents filed their Response ("Answer") (Doc. 14).  Respondents concede the timeliness of the Petition (*id.* at 4), and that Petitioner has exhausted his state remedies on his claims in Grounds One and Three based upon the imposition of a flat-time sentence (*id.* at 10).  Respondents argue that Petitioner failed to fairly present to the PCR Court any claim related to the failure to give credit for time served on probation or based on ineffective assistance of counsel, and therefore those claims are unexhausted and now procedurally defaulted (*id.* at 11).  Respondents argue that Petitioner's exhausted claims are without merit. (*Id.* at 11-14.)

**Reply** - Petitioner has not replied.

### III. APPLICATION OF LAW TO FACTS

**A.  EXHAUSTION & PROCEDURAL DEFAULT**

Respondents argue that Petitioner's claims in Ground Two (Ineffective Assistance of Counsel) and his claims in Grounds One and Three founded upon the lack of credit for time on probation are unexhausted, now procedurally defaulted, and thus barred from habeas review.

**1. Exhaustion Requirement**

Generally, a federal court has authority to review a state prisoner's claims only if available state remedies have been exhausted.  *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*). The exhaustion doctrine, first developed in case law, has been codified at 28 U.S.C. § 2254(b) and (c).  When seeking habeas relief, the burden is on the petitioner to show that he has properly exhausted each claim.  *Cartwright v. Cupp,* 650 F.2d 1103, 1104

(9th Cir. 1981)(*per curiam*), *cert. denied,* 455 U.S. 1023 (1982).

### a.  Proper Forum/Proceeding

Ordinarily,  "to exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32." *Roettgen v. Copeland*,  33 F.3d 36, 38 (9th Cir. 1994).   Only one of these avenues of relief must be exhausted before bringing a habeas petition in federal court.   This is true even where alternative avenues of reviewing constitutional issues are still available in state court. *Brown v. Easter*, 68 F.3d 1209, 1211 (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S. 1059 (1989).  "In cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'" *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005)(quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir.1999)).

### b.  Fair Presentment

To result in exhaustion, claims must not only be presented in the proper forum, but must be "fairly presented."  That is, the petitioner must provide the state courts with a "fair opportunity" to apply controlling legal principles to the facts bearing upon his constitutional claim.  28 U.S.C. § 2254;  *Picard v. Connor,* 404 U.S. 270, 276-277 (1971).  A claim has been fairly presented to the state's highest court if the petitioner has described both the operative facts and the federal legal theory on which the claim is based. *Kelly v. Small*, 315 F.3d 1063, 1066 (9th Cir. 2003) (overruled on other grounds, *Robbins v. Carey*, 481 F.3d 1143, 1149 (9th Cir. 2007)).

### c.  Application to Petitioner's Claims

 **Ground Two (Ineffective Assistance)** -  In his Ground Two, Petitioner argues that his Sixth Amendment rights to effective assistance of counsel were violated when: (1) in the

2000 "Defendant's Status Report: Re Sentencing,"  trial counsel incorrectly represented to Petitioner and the trial court that Petitioner's conviction was eligible for probation under the new (no flat time / probation eligible) law; (2) at the 2006 sentencing, trial counsel failed to insist on application of the new law to avoid imposition of a flat-time sentence; and (3) PCR counsel failed to challenge the imposition of the flat-time sentence.  (Amended Pet., Doc. 6 at 7.)

Petitioner did raise various claims of  ineffective assistance of counsel in his Petition for Review to the Arizona Court of Appeals (Exhibit S at 9-13).[3]  However, he did not raise any claim of ineffective assistance in his PCR Petition (Exhibit O), or his Motion to Supplement (Exhibit Q).

Presentation to the Arizona Court of Appeals for the first time is not sufficient to exhaust an Arizona state prisoner's remedies.  "Submitting a new claim to the state's highest court in a procedural context in which its merits will not be considered absent special circumstances does not constitute fair presentation."  *Roettgen v. Copeland*,  33 F.3d 36, 38 (9th Cir. 1994) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)).  In *Casey v. Moore*, 386 F.3d 896 (9th Cir. 2004), the court reiterated that to properly exhaust a claim, "a petitioner must properly raise it on every level of direct review." *Id.* at 916.

> Academic treatment accords: The leading treatise on federal habeas corpus states, "Generally, a petitioner satisfies the exhaustion requirement if he properly pursues a claim (1) throughout the entire direct appellate process of the state, or (2) throughout one entire judicial postconviction process available in the state."

*Id.* (quoting Liebman & Hertz, *Federal Habeas Corpus Practice and Procedure*, § 23.3b (4th ed. 1998) (emphasis added).

In Arizona, review of a petition for post-conviction relief by the Arizona Court of Appeals is governed by Rule 32.9, Arizona Rules of Criminal Procedure, which clarifies that

---

[3]  The claims presented to the Arizona Court of Appeals were generally limited to arguing that counsel at the 2006 sentencing  was in error for not insisting on application of the new law.  (Exhibit S, PFR at 9-13.)   In his present version, he adds claims that counsel at the 2000 sentencing was in error for arguing for application of the new law, and that PCR counsel was in error for not challenging the issues.

1   review is available for "issues which were decided by the trial court."  Ariz. R. Crim. P.

2   32.9(c)(1)(ii).  *See also State v. Ramirez*, 126 Ariz. 464, 468, 616 P.2d 924, 928 (Ariz.App.,

3   1980) (issues first presented in petition for review and not presented to trial court not subject

4   to review).

5          Accordingly, because not first presented to the PCR court, Petitioner's Ground Two

6   was not fairly presented to the Arizona Court of Appeals, and thus his state remedies were

7   not fairly exhausted.

8          **Grounds One and Three (Credit for Probation)** - Petitioner's due process claims

9   in Grounds One and Three are founded in part upon the lack of credit for time on probation.

10  Respondents contend that these portions of those Grounds were not properly exhausted.

11         In his Petition for Review, Petitioner did assert that he was incorrectly denied "credit

12  for the 4 ½ years ...appellant was illegally sentenced to serve by the trial court, and that

13  which he satisfactory complete." (Exhibit S, PFR at 8.)  However, these assertions were not

14  made in connection with any allegation of a denial of due process.   Rather, they were a

15  passing reference in a paragraph asserting the imposition of "a disproportionate sentence

16  ...handed down upon appellant in a merciless manner."  (*Id.*)  Even if Petitioner's concluding

17  arguments that his sentence was illegal, and thus a denial of due process, could be read to

18  have referred back to his passing reference to credits for his 4 ½ years on probation, and thus

19  to have presented the current claims, Petitioner did not assert that claim to the PCR Court.

20         Indeed, the shift in Petitioner's arguments is reflected in his prayers for relief.  In his

21  Motion to Supplement to the PCR Court, his request was limited to relief from the flat-time

22  sentence. (Exhibit Q at 12.)  In his Petition for Review he added a prayer for "alternatively,

23  the granting of the 4 ½ years of probation time credit towards appellant's 7 year flat term."

24  (Exhibit S, PFR at 15.)

25         As discussed above, presentation of this claim for the first time to the Arizona Court

26  of Appeals was not fair presentation.

27         **Summary** -   Accordingly, the undersigned concludes that Petitioner's claims in his

28  Ground Two and his claims in Grounds One and Three based upon credit for time served on

1    probation were never fairly presented to the Arizona Court of Appeals, and thus his state
2    remedies were not properly exhausted.

3

4    **2.  Procedural Default**

5        Ordinarily, unexhausted claims are dismissed *without prejudice*.  *Johnson v. Lewis*,
6    929 F.2d 460, 463 (9th Cir. 1991).  However, where a petitioner has failed to properly
7    exhaust his available administrative or judicial remedies, and those remedies are now no
8    longer available because of some procedural bar, the petitioner has "procedurally defaulted"
9    and is generally barred from seeking habeas relief.  Dismissal *with prejudice* of a
10   procedurally barred or procedurally defaulted habeas claim is generally proper absent a
11   "miscarriage of justice" which would  excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11
12   (1984).

13       Respondents argue that Petitioner may no longer present his unexhausted claims to
14   the state courts, and thus they are procedurally defaulted.  Respondents generally rely upon
15   Arizona's preclusion bar, set out in Ariz. R. Crim. Proc. 32.2(a).  (Answer, Doc. 14 at 7.)

16       **Remedies by Direct Appeal** - Under Ariz.R.Crim.P. 31.3, the time for filing a direct
17   appeal expires twenty days after entry of the judgment and sentence.  The Arizona Rules of
18   Criminal Procedure do not provide for a successive direct appeal.  *See generally*
19   Ariz.R.Crim.P. 31.   Accordingly, direct appeal is no longer available for review of
20   Petitioner's unexhausted claims.

21       **Remedies by Post-Conviction Relief** - Petitioner can no longer seek review by a
22   subsequent PCR Petition.  Under the rules applicable to Arizona's post-conviction process,
23   a claim may not ordinarily be brought in a petition for post conviction relief that  "has been
24   waived at trial, on appeal, or in any previous collateral proceeding."    Ariz.R.Crim.P.
25   32.2(a)(3).  Under this rule,  some claims may be deemed waived if the State simply shows
26   "that the defendant did not raise the error at trial, on appeal, or in a previous collateral
27   proceeding." *Stewart v. Smith*,  202 Ariz. 446, 449, 46 P.3d 1067, 1070 (2002) (quoting
28   Ariz.R.Crim.P. 32.2, Comments).  For others of "sufficient constitutional magnitude," the

State "must show that the defendant personally, 'knowingly, voluntarily and intelligently' [did] not raise' the ground or denial of a right." *Id.* That requirement is limited to those constitutional rights "that can only be waived by a defendant personally." *State v. Swoopes* 216 Ariz. 390, 399, 166 P.3d 945, 954 (App.Div. 2, 2007). Indeed, in coming to its prescription in *Stewart v. Smith*, the Arizona Supreme Court identified: (1) waiver of the right to counsel, (2) waiver of the right to a jury trial, and (3) waiver of the right to a twelve-person jury under the Arizona Constitution, as among those rights which require a personal waiver. 202 Ariz. at 450, 46 P.3d at 1071.[4]

Here, Petitioner's unexhausted claims do not fit within the list of claims identified as requiring a personal waiver. Nor are they of the same character. Therefore, it appears that Petitioner's claims would be precluded by his failure to raise them in an earlier proceeding.

Timeliness Bar - Even if not barred by preclusion, Petitioner would now be barred from raising his claims by Arizona's time bars. Ariz.R.Crim.P. 32.4 requires that petitions for post-conviction relief (other than those which are "of-right") be filed "within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is the later." *See State v. Pruett*, 185 Ariz. 128, 912 P.2d 1357 (App. 1995) (applying 32.4 to successive petition, and noting that first petition of pleading defendant deemed direct appeal for purposes of the rule). That time has long since passed.

Exceptions - Rules 32.2 and 32.4(a) do not bar dilatory claims if they fall within the category of claims specified in Ariz.R.Crim.P. 32.1(d) through (h). *See* Ariz. R. Crim. P. 32.2(b) (exceptions to preclusion bar); Ariz.R.Crim.P. 32.4(a) (exceptions to timeliness bar).

---

[4] Some types of claims addressed by the Arizona Courts in resolving the type of waiver required include: ineffective assistance (waived by omission), *Stewart,* 202 Ariz. at 450, 46 P.3d at 1071; right to be present at non-critical stages (waived by omission), *Swoopes*, 216 Ariz. at 403, 166 P.3d at 958; improper withdrawal of plea offer (waived by omission), *State v. Spinosa*, 200 Ariz. 503, 29 P.3d 278 (App. 2001); double jeopardy (waived by omission), *State v. Stokes*, 2007 WL 5596552 (App. 10/16/07); illegal sentence (waived by omission), *State v. Brashier*, 2009 WL 794501 (App. 2009); judge conflict of interest (waived by omission), *State v. Westmiller*, 2008 WL 2651659 (App. 2008).

Petitioner has not asserted that any of these exceptions are applicable to his claims.   Nor does it appear that such exceptions would apply.  The rule defines the excepted claims as follows:

> d. The person is being held in custody after the sentence imposed has expired;
> e. Newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence. Newly discovered material facts exist if:
> (1) The newly discovered material facts were discovered after the trial.
> (2) The defendant exercised due diligence in securing the newly discovered material facts.
> (3) The newly discovered material facts are not merely cumulative or used solely for impeachment, unless the impeachment evidence substantially undermines testimony which was of critical significance at trial such that the evidence probably would have changed the verdict or sentence.
> f. The defendant's failure to file a notice of post-conviction relief of-right or notice of appeal within the prescribed time was without fault on the defendant's part; or
> g. There has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence; or
> h. The defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt, or that the court would not have imposed the death penalty.

Ariz.R.Crim.P. 32.1.

Paragraph 32.1(d) (expired sentence) generally has no application to an Arizona prisoner who is simply attacking the validity of his conviction or sentence.  Here, Petitioner challenges the legality of the sentence imposed by the state court, but does not argue he is simply being held beyond the sentence actually imposed.  Where a claim is based on "newly discovered evidence" that has previously been presented to the state courts, the evidence is no longer "newly discovered" and paragraph (e) has no application. Paragraph (f) (which has no application where the petitioner filed a timely notice of appeal or had no right to appeal) does not apply because Petitioner does not contend that he was impeded in filing a timely notice of appeal.  Paragraph (g) has no application because Petitioner has not asserted a change in the law since his last PCR proceeding.  Finally, paragraph (h), concerning claims of actual innocence, has no application to Petitioner's procedural claims.  *See State v.*

1   *Swoopes*, 216 Ariz. 390, 404, 166 P.3d 945, 959 (App. 2007) (32.1(h) did not apply where

2   petitioner had " not established that trial error ...amounts to a claim of actual innocence").

3       <u>Summary</u> - Accordingly, the undersigned must conclude that review through

4   Arizona's direct appeal and post-conviction relief process is no longer possible for

5   Petitioner's unexhausted claims.

6       **<u>Summary re Procedural Default</u>** - Petitioner failed to properly exhaust his state

7   remedies on the federal claims in Ground Two and those portions of Grounds One and Three

8   based upon a lack of credits for time served on probation, and is now procedurally barred

9   from doing so.  Accordingly, these claims are procedurally defaulted, and absent a showing

10  of cause and prejudice or actual innocence, must be dismissed with prejudice.

11

12  **3.  Cause and Prejudice**

13      If the habeas petitioner has procedurally defaulted on a claim, or it has been

14  procedurally barred on independent and adequate state grounds, he may not obtain federal

15  habeas review of that claim absent a showing of "cause and prejudice" sufficient to excuse

16  the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).  Although both "cause" and "prejudice"

17  must be shown to excuse a procedural default, a court need not examine the existence of

18  prejudice if the petitioner fails to establish cause. *Engle v. Isaac*, 456 U.S. 107, 134 n. 43

19  (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 n. 10 (9th Cir.1991).

20      "Cause" is the legitimate excuse for the default.  *Thomas*, 945 F.2d at 1123. "Because

21  of the wide variety of contexts in which a procedural default can occur, the Supreme Court

22  'has not given the term "cause" precise content.'" *Harmon v. Barton*, 894 F.2d 1268, 1274

23  (11th Cir. 1990) (quoting *Reed*, 468 U.S. at 13), *cert. denied*, 498 U.S. 832 (1990).  The

24  Supreme Court has suggested, however, that cause should ordinarily turn on some objective

25  factor external to petitioner, for instance:

26          ... a showing that the factual or legal basis for a claim was not
    reasonably available to counsel, or that "some interference by officials",

27          made compliance impracticable, would constitute cause under this
    standard.

28

*Murray v. Carrier*, 477 U.S. 478, 488 (1986) (citations omitted).

Here, Petitioner does not assert any cause to excuse his failure to exhaust. To be sure, Petitioner argues that PCR counsel should have asserted various claims. However, to constitute cause to excuse a procedural default, deficient performance by counsel must constitute an independent constitutional violation. *Ortiz v. Stewart*, 149 F.3d 923, 932, (9th Cir. 1998). In *Patrick Poland v. Stewart*, 169 F. 3d 573 (9th Cir. 1999), the Ninth Circuit held that "[b]ecause there is no right to an attorney in state post-conviction proceedings, there cannot be constitutionally ineffective assistance of counsel in such proceedings." *Id.* at 588 (quoting *Coleman v. Thompson*, 501 U.S. 722,  752 (1991)).

The undersigned finds no basis for a finding of "cause."

## 4.  Miscarriage of Justice

The standard for "cause and prejudice" is one of discretion intended to be flexible and yielding to exceptional circumstances, to avoid a "miscarriage of justice." *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986). Accordingly, failure to establish cause may be excused "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (emphasis added). Although not explicitly limited to actual innocence claims, the Supreme Court has not yet recognized a "miscarriage of justice" exception to exhaustion outside of actual innocence. *See* Hertz & Lieberman, *Federal Habeas Corpus Pract. & Proc.*, §26.4 at 1229, n. 6 (4th ed. 2002 Cumm. Supp.). The Ninth Circuit has expressly limited it to claims of actual innocence. *Johnson v. Knowles*, 541 F.3d 933, 937 (9th Cir. 2008). Petitioner makes no assertion of his actual innocence, and thus remains subject to the effect of his procedural defaults.

## 5.  Summary re Exhaustion and Procedural Defaultu

Petitioner failed to properly exhaust his state remedies on the claims in  Ground Two and those portions of Grounds One and Three based upon a lack of credits for time served

on probation by fairly presenting them to the Arizona Court of Appeals.  He would now be procedurally barred from doing so, and has therefore procedurally defaulted on these claims. He fails to show cause and prejudice or actual innocence to avoid the effect of that procedural default.  Accordingly, these claims must be dismissed with prejudice.

**B. GROUNDS ONE AND THREE: Due Process Regarding Imposition of Flat Sentence**

In the properly exhausted portions of his Grounds One and Three, Petitioner argues that the imposition of a flat time sentence was a violation of his Fifth Amendment Due Process rights, and his Fourteenth Amendment due process and equal protection rights.

**Nature of Petitioner's Claims** - Petitioner challenged the imposition of the flat time sentence in his PCR proceeding.  This habeas court reviews the last reasoned decision issued by the state courts.  *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991).  The Arizona Court of Appeals and Arizona Supreme Court issued summary denials on Petitioner's Petition for Review.  (*See* Exhibit T, Order 11/9/07; and Exhibit U, Order 4/1/08.)  Consequently, this Court looks to the PCR Court's reasoning.

The claim was rejected by the PCR Court based upon a determination that the old statute (flat-time/no probation) governed Petitioner's sentence, and his earlier sentence to probation was simply erroneous.  (Exhibit R, M.E. 1/25/07.)

> The Defendant claims he is entitled to Post-Conviction Relief because the sentence imposed on 4/16/06 was unlawful. The Defendant was convicted, in absentia, on 4/14/94 of two counts of Sale of Narcotic Drugs committed on 7/30/93. Under the version of A.R.S. Section 13-3408 effective on the date of the offenses, the Defendant was "not eligible for ... release from confinement on any other basis until the person has served the sentence imposed." Although the Defendant was originally, erroneously, placed on probation, and subsequently reinstated twice, when his probation was revoked on 4/16/06, this statute governed the sentence imposed, A.R.S. Section 1-246, *State v. Stine*, 184 Ariz. 1,906 P.2d 58 (1995).

(Exhibit R, M.E. 1/25/07 at 1.)

Respondents argue that, as found by the PCR Court, Arizona law has long provided for sentencing to be based upon the statutes in effect on the date of the offense, and thus the trial court's determination was a correct statement of state law, and thus properly determined

1    there was no due process violation.  (Answer, Doc. 14 at 14.)

2            Indeed, to the extent that Petitioner simply argues that the state court was simply

3    wrong to apply the old sentencing law, this federal habeas court is without authority to grant

4    relief. *Bains v. Cambra*, 204 F.3d 964, 971 (9th Cir. 2000) ("federal court is bound by the

5    state court's interpretations of state law").

6            However, Respondents, like the state court, miss the essence of Petitioner's

7    constitutional argument.  Petitioner does not contend that the 2006 sentence standing alone

8    was improper.  Rather Petitioner argues that due process and equal protection were  violated

9    because the state initially relied upon the new law to sentence Petitioner to probation, and

10   then relied upon the harsher old law to sentence him to flat-time in prison after a violation

11   of his illegally imposed probation.  Although not part of his Motion to Supplement (where

12   Petitioner laid out his constitutional claims), Petitioner most succinctly laid out his complaint

13   in his PCR petition:

14                  The State has attempted to "get the best of both laws" so to speak; by
                    giving the defendant probation under the new law, and then giving the
15                  defendant flat time in prison under the old law upon his violation of
                    probation.
16
17   (Exhibit O, PCR Pet. at 6.)  Thus, it was not the simple fact of the reliance on the old flat-

18   time sentence law that Petitioner complained of, but the switch from one to the other upon

     the purported violation.
19
             The PCR Court simply glossed over that argument by dismissing the earlier probation
20
     sentence as "erroneously" imposed.  The PCR court did not address whether the combination
21
     of the "erroneous" probation sentence under the new statute and the "proper" flat time
22
     sentence under the old statute was a violation of due process or equal protection, nor whether
23
     the probation sentence could be violated inasmuch as it was illegally imposed.[5]
24

25   _____

26          [5]  It seems to the undersigned, given the illegality of the probation sentence, that
     Petitioner was, in fact, being sentenced in the first instance in 2006, rather than having a
27   sentence imposed upon a revocation of probation.  That does not seem to the undersigned,
     however, to make a difference in the analysis of Petitioner's due process claim. Petitioner
28   does not suggest how it might.

1    **Applicable Law** - As Respondents note, this Court may grant habeas relief only if
2    the state court's decision was "contrary to, or an unreasonable application of, clearly
3    established Federal law, as determined by the Supreme Court of the United States." 28
4    U.S.C. §2254(d)(1).  Where there is no reasoned rejection of a claim, it is impossible to
5    ascertain whether the state court identified the correct law, or whether they applied it
6    reasonably.  This Court is left to apply its own evaluation, comparing the outcome to that of
7    the state court, and only then if there is a discrepancy can this court begin to evaluate whether
8    the state court outcome was "contrary to or an unreasonable application of" Supreme Court
9    law.  *See Himes v. Thompson*, 336 F.3d 848, 853 and n.3 (9th Cir. 2003) ("Independent
10   review of the record is not *de novo* review of the constitutional issue, but rather, the only
11   method by which we can determine whether a silent state court decision is objectively
12   unreasonable").

13   Not surprisingly, given his *pro se* status while this claim was being litigated, Petitioner
14   has failed to cite to any applicable case law to support his claim, let alone applicable
15   Supreme Court decisions.

16   **Appellate Court Decisions** - <u>First Circuit</u> - The closest case the undersigned has
17   found is *DeWitt v. Ventetoulo*, 6 F.3d 32 (1st Cir. 1993).  In *DeWitt*, the defendant was
18   convicted of robbery, assault with intent to murder, and arson.  He was sentenced to life, with
19   parole possible after 10 years.  As a result of the defendant's assistance to a prison guard
20   under attack and subsequent court testimony, the trial court suspended all but 15 years of the
21   sentence, and added a 20 year probation term upon release. The result was to shorten
22   Petitioner's time to parole eligibility.   The procedure under which the suspension occurred
23   was subsequently invalidated, but no action was taken with regard to the defendant, and
24   eventually, after serving less than the 10 years in prison, the defendant was granted parole.
25   Eight months later, he was involved in altercation.  Instead of seeking to revoke his parole,
26   the state sought and obtained an order vacating the suspension of his life sentence, and re-
27   incarcerated the defendant.   The defendant ultimately was acquitted on the charges arising
28   from the altercation, but remained incarcerated.  The defendant challenged the re-imposition

1    of the corrected life sentence on due process grounds.

2        The First Circuit observed:

3        The Constitution contains no general rule that prohibits a court from increasing an earlier sentence where the court finds that it was erroneous and that a higher sentence was required by law. On the contrary, this has occurred, and been upheld against constitutional or other challenges...

4

5

6            But in law what is true for the usual case is often not true in the extreme case. Even the state conceded at oral argument that due process must impose some outer limit on the power to revise sentences upward after the fact. We are concerned here not with the substantive grounds of a state's decision to reduce or increase a sentence, but rather with the inherently procedural issue of whether and when a state can reopen a matter after a final unappealed decision, after a substantial lapse in time during which the state had actual knowledge of the error, and after a significant change in circumstances. In short, the question we face is one of process.

7

8

9

10

11   6 F.3d at 34.  The court then found that the reimposition of the life sentence was a violation

12   of due process, based upon a totality of the circumstances, including: the multi-year period

13   between the suspension and the reimposition of sentence, the reasonableness of the

14   defendant's reliance, his release from prison and formation of new roots, the unusual

15   tardiness of the state in failing to correct the error, and the existence of an alternative parole

16   revocation remedy.  "In sum, this case is the very rare exception to the general rule that

17   courts can, after sentence, revise sentences upward to correct errors."  6 F.3d at 36.

18        Like in *DeWitt*, the Arizona courts effectively re-sentenced Petitioner years after his

19   original, illegal sentence of probation.  There is no reason to believe that Petitioner should

20   have realized his original sentence was incorrect.  But then there is no reason to believe that

21   the error should have come to the State's attention once the original sentencing process was

22   complete, at least until it came time to sentence upon revocation of probation.  And here, the

23   alternative was to consider Petitioner subject to the newer, less onerous statute under which

24   he had been placed on probation, rather than switching horses and sentencing him to the

25   harsher old law.  Finally, Petitioner, like the defendant in *DeWitt*, had profited from the error.

26   In *DeWitt*, the defendant had been released on parole;  Petitioner had been released on

27   probation.  The most striking difference is the absence of a determination in *DeWitt* that the

28   parole conditions had been violated, he had in fact been acquitted; here, Petitioner's

1   probation violation has not been challenged.

2       While this Court might conclude that *DeWitt* is indistinguishable, and thus forms a

3   basis to find a due process violation in this case, *DeWitt* cannot stand as the authority to grant

4   habeas relief to a state prisoner.  Rather, under 28 U.S.C. § 2254(d), this Court must look

5   solely to Supreme Court law for the legal principles to apply.  The decision in *DeWitt*

6   demonstrates the absence of such law.  Although the *DeWitt* court cited two Supreme Court

7   cases, *i.e. United States v. DiFrancesco*, 449 U.S. 117 (1980), and *Morrissey v. Brewer*, 408

8   U.S. 471 (1972), neither of those cases support Petitioner's claim.

9       *DiFrancesco* was cited in *DeWitt* for, and stands for, the proposition that an

10  erroneously low sentence can be corrected to a higher sentence.  *See DeWitt*, 6 F.3d at 34,

11  n.3 and surrounding text.  Moreover, *DiFrancesco* involved a claim grounded upon double

12  jeopardy, not due process.

13      *Morrissey* was cited in *DeWitt* for, and stands for, the proposition that the procedural

14  guarantees due in a parole revocation hearing are not the same as those mandated at a

15  criminal trial.  *See DeWitt*, 6 F.3d at 36.

16      Thus, neither of these Supreme Court cases establish a due process right to consistent

17  application of the same sentencing statute (even if erroneous) or a prohibition against

18  imposition of a technically correct sentence after imposition of an incorrect one. Indeed, in

19  *Onifer v. Tyszkiewicz*, 255 F.3d 313 (6th Cir. 2001), the Sixth Circuit declined to apply

20  *DeWitt's* reasoning in a state habeas case because the matter had not been addressed by the

21  Supreme Court. *Id.* at 317-318. Likewise, in *McInerney v. Helling*, 2009 WL 801834 (D.Nev.

22  2009), District Judge Hicks rejected a state prisoner's claim founded on *DeWitt*, observing

23  that "[b]ecause the Supreme Court has not ruled on this question, the Nevada Supreme

24  Court's decision could not be contrary to, or an unreasonable application of, clearly

25  established federal law as determined by the Supreme Court, and this Court cannot grant

26  Petitioner relief on this issue.  28 U.S.C. § 2254(d)(1)."

27      <u>Ninth Circuit Case Law</u> - Moreover, this Court is bound by Ninth Circuit law.  In

28  *People v. Materne*, 72 F.3d 103 (9th Cir. 1995), the Ninth Circuit explicitly declined to follow

- 18 -

1   *DeWitt*, and found no due process violation from the upward adjustment of a sentence, as

2   provided for under Guam law, shortly before the defendant's release from prison.  Instead,

3   *Materne* relied upon Ninth Circuit double jeopardy precedent which found a defendant has

4   no reasonable expectation of finality in an illegal sentence.  *Id.* at 106-107.  *See also* Russ,

5   *Power of Court to Increase Severity of Unlawful Sentence*, 28 A.L.R. 4th 147 (discussing

6   conflict among federal and state jurisdictions).

7       **Supreme Court Law** - There are of course other Supreme Court cases that address

8   resentencing.  None, however, mandate relief to Petitioner on his due process and equal

9   protection claim.

10      <u>Vindictive Resentencing Cases</u> - For example, Petitioner's case does not fit within the

11  line of cases on vindictive resentencing.  In *North Carolina v. Pearce*, 395 U.S. 711 (1969),

12  the Court held that equal protection does not bar imposition of a harsher sentence on retrial

13  following a successful appeal by a defendant, so long as the harsher sentence is justified by

14  events subsequent to the original sentencing.

> [W]henever a judge imposes a more severe sentence upon a defendant
> after a new trial, the reasons for his doing so must affirmatively appear.
> Those reasons must be based upon objective information concerning
> identifiable conduct on the part of the defendant occurring after the
> time of the original sentencing proceeding. And the factual data upon
> which the increased sentence is based must be made part of the record,
> so that the constitutional legitimacy of the increased sentence may be
> fully reviewed on appeal.

395 U.S. at 726.  Here, Petitioner did not obtain a retrial, and was not re-sentenced, but

sentenced upon a purported probation violation.  Moreover, his continued behavior resulting

in the violations of probation could have justified a harsher sentence.  *See also Alabama v.*

*Smith*, 490 U.S. 794 (1989) (declining to apply *Pearce* to sentence after trial as compared to

prior sentence after guilty plea); *Colten v. Kentucky*, 407 U.S. 104 (1972) (declining to apply

*Pearce* to retrial in trial *de novo* in separate tier of court system); and *Moon v. Maryland*, 398

U.S. 319 (1970) (dismissing as improvidently granted petition under *Pearce* where defense

counsel denied the sentence was product of vindictiveness); *Chaffin v. Synchcombe*, 412 U.S.

17 (1973) (declining to extend *Pearce* to jury determined sentences).

1       <u>Double Jeopardy Cases</u> - The Supreme Court has addressed similar factual scenarios

2   in a double jeopardy context, *e.g. U.S. v. Benz*, 282 U.S. 304 (1931);[6] *Bozza v. U.S.*, 330 U.S.

3   160 (1947);[7] *Arizona v. Ramsey*, 467 U.S. 203 (1984);[8] and *Jones v. Thomas*, 491 U.S. 376

4   (1989)[9].  However, Petitioner does not here assert a double jeopardy claim.

---

6       [6] In *Benz*, the Court found over objection by the government that a court had the power, at the same term, to reduce a sentence previously imposed.  The Court noted, however, that "the power could not be so used as to violate the constitutional guarantee against double punishment.  282 U.S. at 308 (quoting *Ex Parte Lange*, 85 U.S. 163 (1873).) *But see DiFrancesco*, 449 U.S. at 138-139 (concluding language in *Benz* appearing to preclude an upward adjustment was mere *dicta*).

        [7] In *Bozza*, the defendant was convicted of violating portions of the Internal Revenue Code which mandated imposition of a fine *and* imprisonment.  When sentence was pronounced, the judge ordered only imprisonment.   Later realizing his error, the judge recalled the defendant to the courtroom and re-sentenced him to imprisonment and a fine.  The Court rejected a claim that this was a double jeopardy violation.

> If this inadvertent error cannot be corrected in the manner used here by the trial court, no valid and enforceable sentence can be imposed at all.  This Court has rejected the 'doctrine that a prisoner, whose guilt is established by a regular verdict, is to escape punishment altogether because the court committed an error in passing the sentence.'. The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner. In this case the court 'only set aside what it had no authority to do, and substitute(d) directions required by the law to be done upon the conviction of the offender.' It did not twice put petitioner in jeopardy for the same offense. The sentence as corrected, imposes a valid punishment for an offense instead of an invalid punishment for that offense.

330 U.S. at 166-167.

        [8] In *Ramsey*, the defendant was sentenced (on the basis of a misconstruction of the capital sentencing law) to life for murder, etc., appealed, and on remand was sentenced to death.  The Court found that subjecting the defendant again to the death penalty process (which was comparable to a trial) was a violation of double jeopardy. 467 U.S. at 210.

        [9] In *Jones*, the defendant was convicted of attempted robbery and felony murder.  He was sentenced to consecutive terms of 15 years and life, respectively.  The robbery sentence was commuted after serving eight years, and then the robbery conviction and sentence was vacated on the basis that it constituted the same offense as the felony murder.  The defendant argued that his completion of the robbery sentence (as commuted) counted as full punishment for the combined offense, and thus precluded him from being held to the life sentence on the felony murder.  The Court held that double jeopardy's concerns with multiple punishments was satisfied because the state court had "vacated the attempted robbery conviction and sentence and credited the time that [the defendant] had served under that conviction against

1       <u>Satisfied Sentence Cases</u> - The defendant in *In re Bradley*, 318 U.S. 50  (1943) was

2   given a prison term and a fine.  The statute only permitted either a fine or imprisonment.

3   Defendant began serving the sentence and paid the fine.  The trial court noticed the error,

4   attempted to return the fine, and re-sentenced him to solely the prison term.  The Court found

5   that payment of the fine, despite the attempted return, satisfied the sentence, and thus the

6   prison term was illegal.  However, this was not a case founded upon due process or equal

7   protection.  Moreover, here Petitioner had not satisfied his probation term.  *See also Ex parte*

8   *Lange,* 85 U.S. 163 (1873) (reaching a similar conclusion on double jeopardy grounds).

9       **Summary** - In sum, the undersigned can find no Supreme Court precedent which

10   would mandate a determination that Petitioner's due process or equal protection rights were

11   violated in this case.  Thus, even if this Court could find such a violation, Petitioner would

12   not be entitled to habeas relief under the limitations of 28 U.S.C. § 2254(d)(1).  Accordingly,

13   Petitioner's claims on these bases must be denied.

14

15   **C. SUMMARY**

16       Petitioner's claims in Ground Two and those portions of Grounds One and Three

17   based upon a lack of credits for time served on probation are procedurally defaulted and must

18   be dismissed with prejudice. In the properly exhausted portions of his Grounds One and

19   Three, Petitioner's claims that the imposition of a flat time sentence was a violation of his

20   Fifth Amendment due process rights, and his Fourteenth Amendment due process and equal

21   protection rights, are not supported by Supreme Court law, and therefore must be denied.

22

23   **IV.  CERTIFICATE OF APPEALABILITY**

24       **Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in

25   habeas cases the "district court must issue or deny a certificate of appealability when it enters

26   a final order adverse to the applicant."  Such certificates are required in cases concerning

27   _____

28   the remaining sentence for felony murder."  491 U.S. at 382.

1   detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C.

2   § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

3         Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention

4   pursuant to a State court judgment.   The recommendations if accepted will result in

5   Petitioner's Petition being  resolved adversely to Petitioner.  Accordingly, a decision on a

6   certificate of appealability is required.

7         **Applicable Standards** - The standard for issuing a certificate of appealability

8   ("COA") is whether the applicant has "made a substantial showing of the denial of a

9   constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the

10   constitutional claims on the merits, the showing required to satisfy § 2253(c) is

11   straightforward: The petitioner must demonstrate that reasonable jurists would find the

12   district court's assessment of the constitutional claims debatable or wrong."  *Slack v.*

13   *McDaniel*, 529 U.S. 473, 484 (2000).  "When the district court denies a habeas petition on

14   procedural grounds without reaching the prisoner's underlying constitutional claim, a COA

15   should issue when the prisoner shows, at least, that jurists of reason would find it debatable

16   whether the petition states a valid claim of the denial of a constitutional right and that jurists

17   of reason would find it debatable whether the district court was correct in its procedural

18   ruling." *Id.*

19         **Standard Not Met** - Assuming the recommendations herein are followed in the

20   district court's judgment, that decision will be in part on procedural grounds, and in part on

21   the merits.

22         To the extent that Petitioner's claims are rejected on procedural grounds, under the

23   reasoning set forth herein,  the undersigned finds that "jurists of reason" would not "find it

24   debatable whether the district court was correct in its procedural ruling."

25         To the extent that Petitioner's claims are rejected on the merits, under the reasoning

26   set forth herein,  the constitutional claims are plainly without merit.

27         Accordingly, to the extent that the Court adopts this Report & Recommendation as

28   to the Petition,  a certificate of appealability should be denied.

## C. SUMMARY

Petitioner claims in Ground Two and those portions of Grounds One and Three based upon a lack of credits for time served on probation are procedurally defaulted and must be dismissed with prejudice. In the properly exhausted portions of his Grounds One and Three, Petitioner's claims that the imposition of a flat time sentence was a violation of his Fifth Amendment due process rights, and his Fourteenth Amendment due process and equal protection rights, are not supported by Supreme Court law, and therefore must be denied.

## V.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Ground Two (ineffective assistance), and those portions of Grounds One and Three based upon a lack of credits for time served on probation, of the Petitioner's Petition for Writ of Habeas Corpus, filed May 12, 2009 (Doc. 6) be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that the remainder of Petitioner's Petition for Writ of Habeas Corpus, filed May 12, 2009 (Doc. 6) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that to the extent the reasoning of this Report & Recommendation is adopted, that a certificate of appealability **BE DENIED**.

## V. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See also* Rule 8(b), Rules Governing Section 2254 Proceedings.  Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Pursuant to *Local Civil Rule 7.2(e)(3)*, unless otherwise permitted by the Court, an objection to a Report and Recommendation shall not exceed ten

1    (10) pages.  Failure to timely file objections to any findings or recommendations of the

2    Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of

3    the issues, *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),

4    and will constitute a waiver of a party's right to appellate review of the findings of fact in an

5    order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins*

6    *v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

7

8    DATED: February 9, 2011                    _____

9                                                              JAY R. IRWIN
                                                         United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 24 -